UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

**FULTON BANK, N.A.,**

      **Plaintiff,**

v.                                                                                                 Civil Action No. 4:19-cv-13

**MONTICELLO WOODS ACTIVE
ADULT, LLC, ET AL.,**

      **Defendants.**

## MEMORANDUM OPINION AND ORDER

Plaintiff Fulton Bank, N.A. ("Fulton" or "the Bank") seeks judgment against two Guarantors for amounts due under a development loan originally issued to Monticello Woods Active Adult, LLC ("MWAA"). After settling with the original Borrower and several other Guarantors, Fulton has moved for summary judgment against two remaining Guarantor Defendants, Powhatan Crossing, Inc. ("Powhatan") and C. Lewis Waltrip, II ("Waltrip"). Neither Powhatan nor Waltrip responded to the motion and as a result Fulton's Statement of Undisputed Facts is uncontradicted. Because those facts establish Fulton's right to judgment as a matter of law, the Court GRANTS Fulton's motion and will enter judgment against Powhatan and Waltrip. As the findings underlying that judgment also preclude relief on any claim that Powhatan and/or Waltrip attempted to assert in their Counterclaim, the Court will also enter judgment in favor of Fulton and dismiss the remaining Counterclaim with prejudice.

1

## I. <u>Statement of Undisputed Facts</u>[1]

Fulton Bank is the successor in interest to Resource Bank, which originally initiated the development financing underlying this action. Pesavento Aff. ¶ 5 (ECF No. 117-1, 2), Ex. 1 (ECF No. 117-2). Resource Bank originally issued a $9 million credit facility to fund development of a residential community known as The Settlement at Powhatan Creek (the "Project"). The financing is evidenced by a Promissory Note dated January 18, 2007 in the original amount of $9 million (the "Line Note"), id. Ex. 2 (ECF No. 117-3); a Letter of Credit Note of the same date in the original amount of $1.5 million (the "Letter of Credit Note"), id. Ex. 3 (ECF No. 117-4); and a note from July 25, 2016 in the amount of $100,000.00 (the "$100,000 Note"), id. Ex. 4 (ECF No. 117-5) (collectively, the "Loan Documents"). The terms of the Line Note and Letter of Credit Note are set out in a simultaneously executed Development Loan Agreement, which was signed by the Bank, MWAA and six Guarantors, including Defendants Waltrip and Powhatan. Id. Ex. 5 (ECF No. 117-6).

At various times during the life of the Project, the Loan Documents were supplemented and amended. In total, the loans were modified thirteen times between October 25, 2010 and March 15, 2018. Mem. Supp. Mot. for Summ. J. (ECF No. 117, at 4); Pesavento Aff. ¶¶ 10-11 (ECF No. 117-1, at 3), Exs. 7, 8 (ECF Nos. 117-8-117-15). The Line Note matured on March 1, 2017 and the obligors failed to pay the amount due under the Note. Pesavento Aff. ¶ 12 (ECF No. 117-1, at 4), Ex. 8 (ECF No. 117-14, at 19). Following its maturity, additional sums were drawn by the County where the Project was being constructed. Id. ¶¶ 14-15 (ECF No. 117-1, at 4). The

---

[1] Neither Waltrip nor Powhatan opposed the motion. Because Waltrip is proceeding pro se, following expiration of the time to respond the Court directed the Bank to file the Notice to pro se parties required by Local Rule 7(k). Despite this warning and additional time to respond, neither Defendant responded. Pursuant to Local Rule 56 these facts are therefore established by Fulton's list of undisputed material facts and the exhibits cited therein. Pl.'s Mem. Supp. Mot. Sum. J. (ECF No. 117, at 3-6); Pesavento Aff. (ECF No. 117-2).

Letter of Credit Note matured on December 1, 2018 and Defendants failed to pay the amounts due under it after maturity. Id. ¶¶ 16-17. Finally, the $100,000.00 Note matured on August 1, 2017 and the Defendants failed to pay the amounts due under it after maturity. Id. ¶¶ 18-19. Each of the Notes provides that failing to make a payment when it becomes due is an event of default. Id. ¶ 20, Ex. 2 (ECF No. 117-3, at 2), Ex. 3 (ECF No. 117-4, at 2), Ex. 4 (ECF No. 117-5, at 2). In addition, under the Notes, the Bank is entitled to collect its reasonable attorney's fees and collection expenses following default. Id. ¶ 21 (ECF No. 117-1, at 4), Ex. 2 (ECF No. 117-3, at 2), Ex. 3 (ECF No. 117-4, at 3), Ex. 4 (ECF No. 117-5, at 3).

In addition to signing the Development Loan Agreement as Guarantors, both Waltrip and Powhatan executed individual Guaranties in which they agreed to guaranty, jointly and severally, all of the obligations of the original Borrower, MWAA, under the terms of the Loan Documents. Id. ¶ 22 (ECF No. 117-1, at 5), Ex. 6 (ECF No. 7, at 1, 6). The MWAA borrowing was also guaranteed by four additional Guarantors, namely two builders involved with the Project and their spouses (the "Settling Guarantors").

The Bank initiated this action to recover sums due under the Loan Documents and Guaranties. In response, all four of the Settling Guarantors counterclaimed in two different pleadings. Counterclaims (ECF Nos. 34, 35). Their Counterclaims alleged, among other things, that the Bank improperly advanced funds to MWAA under the Loan Documents and failed to comply with certain conditions precedent to disbursements under the loan. Counterclaim ¶¶ 19-22 (ECF No. 34, at 4); Counterclaim ¶¶ 20-24 (ECF No. 35, at 12-15). The Counterclaims also alleged that Waltrip himself mismanaged the Project and applied loan proceeds in ways not authorized by the Loan Documents. Counterclaim ¶¶ 24, 26 (ECF No. 34, at 5); Counterclaim ¶¶ 19, 20 (ECF No. 35, at 11-12). For their part, Waltrip and Powhatan answered the Bank's

Complaint and included a single sentence in which they purport to "join in, adopt and incorporate" the allegations and claims made against the Bank by the Settling Guarantors. Unlike the specifically pled Counterclaims, the Waltrip Counterclaim is not supported by any separately recited facts beyond the single sentence purporting to adopt the Co-Defendant's filings.

Following extensive litigation and mediation with a magistrate judge of this Court, the Bank settled its claims against MWAA and the Settling Guarantors. Pursuant to that settlement, the court dismissed both the Settling Guarantors' Counterclaims with prejudice, Order (ECF No. 109), and entered judgment against MWAA in the amount of $3,141,407.84, plus daily interest and $450,000.00 in attorney's fees. Order (ECF No. 108). Pursuant to the terms of the settlement, the court also dismissed the Bank's Complaint against the Settling Guarantors with prejudice, retaining the case by the Bank against Waltrip and Powhatan.

Despite demand, neither Powhatan nor Waltrip have paid the sums remaining due under the Guaranties. As of September 25, 2020, and after applying sums collected from all the settling parties, the amount due to Fulton under each Guaranty was $864,536.16. Pesavento Aff. ¶ 23 (ECF No. 117-1, at 5). The Bank now seeks judgment in that amount against Waltrip and Powhatan, and dismissal of their "incorporated" Counterclaim.

## II. Analysis

A.     Standard of Review.

Federal Rule of Civil Procedure 56 requires the Court to grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986). "A material fact is one 'that might affect the outcome of the suit under the governing law.' A disputed fact presents a genuine issue 'if the evidence is

such that a reasonable jury could return a verdict for the non-moving party.'" Spriggs v. Diamond Auto Glass, 242 F.3d 179, 183 (4th Cir. 2001) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

The party seeking summary judgment has the initial burden of informing the Court of the basis of its motion and identifying materials in the record it believes demonstrate the absence of a genuine dispute of material fact. Fed. R. Civ. P. 56(c); Celotex Corp., 477 U.S. at 322-25. When the moving party has met its burden to show that the evidence is insufficient to support the nonmoving party's case, the burden shifts to the nonmoving party to present specific facts demonstrating that there is a genuine issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). The "mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient." Anderson, 477 U.S. at 252. Rather, when "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (internal quotation marks omitted).

B.  Undisputed facts establish that MWAA defaulted on the Development Loan.

In addition to being a negotiable instrument, a promissory note is a contract. See Stimpson v. Bishop, 82 Va. 190, 200 (1886) ("A bond, promissory note, or simple contract, for the payment of money in any shape or form, is a personal contract . . . ." (quoting Coles v. Withers, 74 Va. 186, 197 (1880))).[2] Therefore, "[u]nder Virginia common law, breach of a promissory note is

---

[2] "A federal court sitting in diversity is required to apply the substantive law of the forum state, including its choice-of-law rules." Francis v. Allstate Ins. Co., 709 F.3d 362, 369 (4th Cir. 2013) (citations omitted). "Virginia law looks favorably upon choice of law clauses in a contract, giving them full effect except in unusual circumstances." Colgan Air, Inc. v. Raytheon Aircraft Co., 507 F.3d 270, 275 (4th Cir. 2007) (citing Hitachi Credit Am. Corp. v. Signet Bank, 166 F.3d 614, 624 (4th Cir. 1999)). If the selected "state is reasonably related to the purpose of the agreement, [the court] will apply the parties' choice of substantive law." Hooper v. Musolino, 364 S.E.2d 207, 211 (Va. 1988). Here, the Development Agreement expressly provides that it will be "governed by and construed and enforced in accordance

5

encompassed under a breach of contract claim." S. Bank & Trust Co. v. Pride Grp., LLC, No. 2:14CV255, 2015 WL 410726, at *5 (E.D. Va. Jan. 28, 2015) (quoting Premier Bank, Inc. v. Tech. Res., Inc., No. 1:13CV340, 2013 WL 6834380, at *5 (E.D. Va. Dec. 23, 2013)); Va. Code Ann. § 8.01-27 ("A civil action may be maintained upon any note or writing by which there is a promise, undertaking, or obligation to pay money, if the same be signed by the party who is to be charged thereby, or his agent.").

"The elements of a breach of contract action are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." Sunrise Continuing Care, LLC v. Wright, 671 S.E.2d 132, 135 (Va. 2009) (quoting Filak v. George, 594 S.E.2d 610, 614 (Va. 2004)). As described in the Pesavento Affidavit, the Bank was the holder of three legally enforceable Notes evidencing development financing provided to MWAA. MWAA defaulted on the Notes by failing to pay sums when they became due. As a result of MWAA's default, the Bank was damaged. Indeed, the court has already entered judgment against MWAA for over $3.1 million as a result of its breach. Accordingly, the Bank has established a breach of the Loan Documents and resulting damage to Fulton.

C.  The undisputed facts establish Waltrip and Powhatan are liable to the Bank as Guarantors.

Under Virginia law, a guaranty is "an independent contract, by which the guarantor undertakes, in writing, upon a sufficient undertaking, to be answerable for the debt, or for the performance of some duty, in case of the failure of some other person who is primarily liable to

---

with the laws of the Commonwealth of Virginia" where the Project was located. See Pesavento Aff. Ex. 5 (ECF No. 117-6, at 17). Accordingly, the Court will apply Virginia law.

6

pay or perform." McDonald v. Nat'l Enterprises, Inc., 547 S.E.2d 204, 207 (Va. 2001) (quoting B.F. Goodrich Rubber Co., Inc. v. Fisch, 127 S.E. 187, 188 (Va. 1925)). Where, as here, an obligee seeks to recover on the guaranty, it must establish "the existence and ownership of the guaranty contract, the terms of the primary obligation and default on that obligation by the debtor, and nonpayment of the amount due from the guarantor under the terms of the guaranty contract." McDonald, 547 S.E.2d at 207 (citations omitted).

As set forth above, undisputed facts establish that the original borrower, MWAA, defaulted on its obligations under the Loan Documents by failing to pay sums as they became due. Likewise, the facts established by the Bank's motion (and not disputed by Waltrip or Powhatan) confirm Defendants' liability under the Guaranties. As with the other Loan Documents, the Pesavento Affidavit and accompanying exhibits establish that Fulton is the holder of Guaranties signed by both Waltrip and Powhatan. Neither party contradicts the sums remaining due under the Guaranties after applying proceeds from the Settling Guarantors. As a result, the undisputed material facts establish that the Bank is entitled to judgment against both Waltrip and Powhatan in the amount of $864,536.61. Pesavento Aff. ¶ 23 (ECF No. 117-1, at 5).

D.   The Waltrip Counterclaim.

In its Motion for Judgment the Bank also seeks dismissal of the Waltrip Counterclaim arguing that it is both procedurally and substantively deficient. In fact, it is not clear what remains of the Waltrip Counterclaim following the Orders already entered by the Court. As noted, Waltrip and Powhatan did not allege any facts supporting their own Counterclaim against the Bank, nor did they specify which facts from the other Counterclaims they intended to adopt. Instead, their Answer purported to adopt in a single sentence the entirety of the two detailed Counterclaims filed by the Settling Guarantors.

At the time the Waltrip/Powhatan pleading was filed, neither of the other two Counterclaims were part of the court's record. Both Counterclaims were filed later the same day, but even assuming Waltrip and Powhatan were permitted to adopt these later-filed pleadings, their attempted wholesale incorporation of the two Counterclaims leaves them without any basis for relief at this stage of the proceedings, and provides no basis to withhold entry of judgment in favor of the Bank on its Complaint.

To begin with, each of the allegedly incorporated Counterclaims filed by the Settling Guarantors sought relief for specific parties – namely the two builders and their spouses. As made clear by the facts they alleged, these parties occupied a completely different status in the transaction from both Waltrip and Powhatan. Waltrip and his entity managed MWAA during the Project, prepared disbursement requests, and contracted for and built infrastructure improvements. The builders allege they were excluded from this process and kept in the dark about Waltrip's alleged insolvency, and the Bank's effort to seize control of the Project. Indeed, the Settling Guarantors brought their Counterclaims partly on the basis that Waltrip himself mismanaged the Project, unreasonably applied funds advanced by the Bank, and – in collusion with the Bank – concealed his diminished financial condition, all of which resulted in the Bank allegedly improperly seizing control of the Project from MWAA, which was then under Waltrip's control. While some of the Settling Guarantors' allegations against the Bank did not specifically rely on Waltrip's conduct, the purported Counterclaim in the Waltrip/Powhatan Answer did not specify which statements in the other pleadings were adopted by reference. See Hinton v. Trans Union, LLC, 654 F. Supp. 2d 440, 446 (E.D. Va. Aug. 11, 2009) ("[I]ncorporation by reference under Rule 10(c) 'must be direct and explicit in order to enable the responding party to ascertain the

nature and extent of the incorporation.'" (citing, 5A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure, § 1326 (3d ed. 2004))).

Because Waltrip and Powhatan's pleading did not specify which statements from the original Counterclaims they intended to adopt by reference, instead, purporting to adopt the entirety of both, their allegations do not state any claim for relief against the Bank in favor of either Waltrip or Powhatan. As noted above, the Settling Guarantors relied principally on the Bank's alleged collusion with Waltrip, and Waltrip's own mismanagement of the Project as a basis for their complaints against it. Moreover, both the Settling Guarantors' Counterclaims have now been dismissed with prejudice, without any judgment being entered against the Bank in favor of any Guarantor. And judgment has been entered in favor of the Bank against its borrower, MWAA, for more than $3.1 million. Finally, the facts which were alleged in support of the Counterclaims are contradicted by the language of the modifications and amendments made part of the record on summary judgment. See, e.g., Eighth Modification to Letter of Credit Note dated March 15, 2018, Pesavento Aff., Ex. 8 (ECF No. 117-15, at 19) ("Each Guarantor does further confirm that it has not right of set-off, counterclaim or defense to the obligations contained in the Guarantee Agreement.").

In light of these circumstances, and Waltrip and Powhatan's failure to respond to the Bank's Motion for Summary Judgment or contradict its Statement of Undisputed Facts, the Counterclaim also provides no basis to withhold entry of judgment on the Bank's Complaint. Accordingly, the Bank's Motion for Summary Judgment is GRANTED and the Court will enter judgment in favor of the Bank against both Waltrip and Powhatan, jointly and severally, in the amount of $864,536.16, plus interest at the contract rate of five percent from September 25, 2020.

The Defendants' "incorporated" Counterclaim, like the two it purportedly relied upon, is also DISMISSED with prejudice.

The Bank did not request an award of attorney's fees against Waltrip or Powhatan. The court will leave the matter on the active docket for fourteen (14) days. If no request for fees is filed in that time, the case will be terminated.

### III. Conclusion

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (ECF No. 116) is GRANTED. The clerk is DIRECTED to enter judgment in favor of Plaintiff and against Defendants Powhatan Crossing, Inc. and C. Lewis Waltrip, II, jointly and severally, in the amount of $864,536.16. Pursuant to 54(d)(2) of the Federal Rules of Civil Procedure, Plaintiff may file a motion for reasonable attorney's fees within fourteen (14) days of entry of judgment. See Fed. R. Civ. P. 54(d)(2)(B)(i). The Clerk is directed to mail a copy of this Order to Waltrip and Powhatan at the address on file with the court and to provide an electronic copy to counsel for Plaintiff.

IT IS SO ORDERED.

                                                /s/
                                     Douglas E. Miller
                                     United States Magistrate Judge

**DOUGLAS E. MILLER**
**UNITED STATES MAGISTRATE JUDGE**

Norfolk, Virginia

December 15, 2020